IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

FILED

JUN 2 0 2023

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

PAUL NICOLETTI,
    Petitioner,

-v-

Civil Case Number: 5:23-CV-120
Judge Bailey
Magistrate James P. Mazzone

M.J. BAYLESS,
    Respondent.
_____/

**PETITIONER'S RESPONSE BRIEF TO RESPONDENT'S MOTION TO DISMISS
OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT (ECFNo. 10)**

Now comes the Petitioner, Paul Nicoletti, pro se, and in response to the Respondent's Motion, hereby states as follows:

RESPONSE TO ARGUMENT NO. I- Petitioner has not received the benefit of 15 days and Time Credits have not been correctly applied towards release date.

Respondent argues that Petitioner's Time Credits have been applied in accordance with 28 C.F.R. 523.42(c)(ii), "for every 30 days of successful participation in programming on March 27, 2022 after he maintained his minimum risk level for two consecutive assessment periods" Ecf No.10, PageID #44. Respondent's argument is flawed for a couple of reasons. First, the date used by Respondent (March 27, 2022) is incorrect since Petitioner's Initial assessment was performed on 9-28-21 as evidenced by the attached Exhibit A. However, Petitioner's second assessment was performed on 10-7-21 as evidenced by attached Exhibit B. It is critical to note that both of the assessments indicate that Petitioner's Risk Level is **"Minimum"**. Respondent's failure to inform the court that the second assessment was performed on 10-7-21, is an example of "bad faith" on the part of the Respondent. Exhibits A & B which are titled as "Male Pattern Risk Scoring", contain the exact same information categories as the "Individual Needs Plan" that the Respondent will undoubtedly argue is the controlling document. But note that nowhere is the Individual Needs Plan actually referred to as an "Assessment".

Page 1

Based upon the discrepancy between the dates of March 27, 2022 and the correct date of October 7, 2021, Petitioner was unjustly denied the rate of 15 days per thirty day time period, for more than five months and three weeks. Respondent's decision to utilize the later date was arbitrary and capricious. The concept illustrated is to reward inmates for keeping their Risk of Recidivating (low or minimum). To maintain that, Congress indicated an inmate needed to **Not** increase their Risk of Recidivating "over 2 consecutive assessments". Congress intentionally did not define the time period between assessments nor did Congress define the specific document or form that must be used to reflect the Risk. Therefore, Petitioner has successfully shown the court both of the Assessments reflecting Petitioner's "Minimum" Risk Level over two consecutive assessment periods (Periods being from August 31, 2021 through September 28, 2021 **and** September 29. 2021 through October 7, 2021; Reflected by attached Exhibits A & B).

Petitioner's second argument relating to the award of 15 days versus 10 days, is that Congress never intended to allow the Bureau of Prisons to calculate the first six or seven months of an inmate's sentence at the rate of 10 days per 30 day time period. Support for this proposition can be found in various reported cases wherein Susan Giddings, the Chief of the Unit Management Section of the Correctional Programs Branch organized under the Correctional Programs Division in the BOP's Central Office, described the BOP Procedures for calculating time credits under the FSA as: "Calculations were based upon the total number of days in the inmate's designated facility, divided by 30 days, and multiplied by 15 for inmates with low or minimum risk levels. (Giddings Declaration at ¶26) Juan Caudillo v. United States, 2022 U.S. Dist. LEXIS 219818, Colorado, Dec. 6, 2022). The <u>Caudillo</u> case fails to include any rate reduction whatsoever and it certainly provides a set specific formula for calculation of the correct FSA Time Credits. Respondent cannot argue that the person most knowledgeable of the proper formula to calculate FSA Time Credits was wrong when she signed a sworn affidavit.

Petitioner received the exhibits inadvertently omitted from Respondent's original filing, on June 8, 2023. (Ecf Documents 18, 18-1, and 18-2, filed on 6/6/23). It is important to point out that Ecf 18, is the Declaration of Paralegal, Misty Shaw. Of special importance is ¶4, which in part states: "He [Petitioner] has a home detention eligibilty of June 6, 2025, projected FSA release date of December 7, 2025, and a final statutory release date of August 19, 2026 via Good Conduct Time." See ¶4, Ecf No. 18, PageID #67. For accuracy purposes, Petitioner needs to correct the representations as stated by Respondent. Petitioner's home detention eligibility date is based on Inmate Data from 5-4-2023, which as of this writing is stale by at least six weeks. In any event, the home elibility date should read "6-9-2025" as opposed to the June 6, 2025 date identified by Respondent. In addition, ¶5 of the Misty Shaw Affidavit states: "Petitioner began earning 15 days of Time Credits for every 30 days of successful participation in programming on March 27, 2022, after he maintained his minimum risk level for two consecutive assessment periods." See ¶5 of Ecf No. 18, PageID #68.

It is critical to note that Ecf No. 18-2, PageID #72, mistakenly omits Petitioner's Second Risk Assessment dated 10-7-2021. See Exhibit B, that is attached to Petitioner's Response Brief. Since Respondent mistakenly has omitted the Second Assessment Date of 10-7-2021, this means that Respondent's records are incomplete and that Petitioner's Earning Rate of 15 days should have commenced on 10-7-2021 as opposed to March 27, 2022. The result of this adjustment reflects a time differential of more than five months where Petitioner was awarded only 10 days per 30 day time period, as opposed to 15 days.

The bottom line is that Petitioner in the worst case scenario should be earning 10 days for the time period from 8-31-2021 through 10-7-2021. All time earned subsequent to 10-7-2021, should reflect an earning rate of 15 days per 30 day time period.

Lastly, it should be noted that Respondent's Ecf No. 18-2, PageID #72, is an FSA Time Credit Report dated 3-26-2023, which makes it stale and outdated by more than three months since Misty Shaw's Affidavit is dated May 8, 2023. It is unknown how Misty Shaw can swear under oath that Petitioner has received all of his FSA Time Credits when the report upon which she relies is outdated. The correct number of FSA Time Credits should be as follows:

> 8-31-21 through 10-7-21 at the rate of 10 days/30 day period
> 10-7-21 through Present, at the rate of 15 days/30 day period

RESPONSE TO ARGUMENT NO. II - The BOP's initiation of halfway house procedures.

Respondent relies upon BOP Program Statement 5410.01 and First Step Act of 2018-Time Credits: Procedures for Implementation of 18 USC §3632(d)(4), in support of its argument that Petitioner's proposed date of January 22, 2024, is incorrect. It is Petitioner's legal position that he is eligible for prerelease custody based upon the detailed Chart that was attached as Exhibit 1 to the Petition for Habeas Corpus Pursuant to 28 USC §2241, filed on 3/30/2023 (Ecf No. 1).

The bottom line is that Respondent argues that Petitioner has been provided with his "projected release date (PRD)" whereby Respondent states: "Petitioner has a final statutory release date of August 19, 2026 via Good Conduct Time and a projected FSA release date of December 7, 2025." See Ecf No. 10, PageID #46. It is critical to note that Respondent **does not** state any objection to the date calculations contained within Petitioner's Chart which results in the date calculation of January 22, 2024, as the date upon which Petitioner should be referred to a halfway house. Said Chart encompasses both FSA Time Credits as well as 18 USC §3624(c)(2) in order to arrive at the date calculation of January 22, 2024. It is clear that BOP Program Statement 5410.01, was drafted for the sole purpose of allowing an inmate to determine the earliest possible date for prerelease custody. The Respondent entirely ignores Petitioner's argument that he is entitled to a "Projected Release Date (PRD)" in accordance with BOP Program Statement 5410.01 CN-1, a copy is attached hereto as Exhibit C.

Page 16 of Exhibit C states as follows:

> For Minimum and Low PATTERN risk inmates, consistent with the methodology described in Sections 6 & 7 of this Policy. the Bureau will initially estimate an FSA conditional Projected Release Date (PRD) by calculating the maximum number of potential FTC that an inmate may earn during his or her sentence. The Bureau will make an initial projection based on the inmate's PATTERN risk level...
>
> The RRC and/or HC recommendation will include the total number of days recommended based on the Five Factor Review (See 18 USC §3621(b), required under the Second Chance Act, plus the remaining number of FTC days not applied to supervised release at the time of referral...

It is clear from Respondent's Response that in no way has the Respondent provided a "conditional Projected Release Date", which is mandatory in accord with BOP Policy Statement 5410.01 CN-1. The BOP's flagrant disregard in the issuance of the PRD, means that the Petitioner's referral to a halfway house or home confinement, will be delayed by more than 18 months! (Compare June 9, 2025 home eligibility date to January 22, 2024 date from Petitioner's Chart). No explanation as to why a PRD has not issued, has been given by the BOP. The fact remains that without the PRD the BOP has no idea how to calculate when Petitioner should be referred to prerelease custody.

Since the BOP has clearly not issued a PRD in accordance with the Policy Statement set forth above, this court should adopt the Chart prepared by Petitioner which shows January 22, 2024, as the date set for referral to prerelease custody. In closing, Petitioner wishes to clarify the fact that the Respondent's usage of the term "projected FSA release date of December 7, 2025"(See Ecf No. 10, PageID #46, second to last sentence.) is not the equivalent of providing the PRD. The December 7, 2025, date fails to contain any future FSA credits or Second Chance Act credits. The Chart attached as Exhibit 1 to the Petition perfectly fits the required BOP's criteria for the PRD.

Page 5

For the sake of the Court's convenience, Petitioner is attaching a copy of the Date Calculation Chart that is hereby re-marked as Exhibit D. The Chart prepared by Petitioner is broken down into 30 day earning periods as defined by the First Step Act. The Chart starts on the day of incarceration (8/31/21) and continues through the end date of 8/19/25, which is the last date when Petitioner ends BOP custody (8/19/26 minus one year based on FSA credit of one year). The Chart reflects in the far right column, a Home Detention Eligibility Date that commences with 1/4/26 and then decreases every 30 day period by 15 days, resulting in the final date of January 22, 2024, as the date for Home Confinement Eligibility. In summary of the Chart, it shows a total of 730 FSA Time Credits. Note that in this case the Respondent does not argue that this total is inaccurate. Further, during the Administrative Remedies BP-11, BP-10, and BP-9, the BOP never questions or voices any concern as to the accuracy of the Chart.

Following the publication of BOP Program Statement 5410.01 (Exhibit C) on November 18, 2022, the BOP has been promising to inmates that the conditional PRD's would be forthcomming. As of today's date, the relevant BOP Counselors and Case Managers continue to indicate that the conditional PRD's are coming any day now and that the BOP's Sentry System will be updated. Needless to say, no such conditional PRD has been incorporated.

In closing, the Petitioner has without a doubt established that not only is there a genuine issue of material fact, but he is entitled to a conclusion of law in his favor, thereby adjudging: 1) the BOP should recalculate Petitioner's FSA Time Credits at the rate of 15 days per every 30 day time period; 2) the BOP should submit Petitioner for RRC/HC Placement as of January 22, 2024; 3) the BOP should issue the promised conditional PRD date in accordance with BOP Program Statement 5401.01; 4) the BOP should recalculate Petitioner's Home Confinement eligibility date.

Dated: 6/14/23          Signed: Paul Nicoletti

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

PAUL NICOLETTI,
    Petitioner,

-v-                                        Case No. 5:23-cv-120
                                                  Judge: Bailey
M.J. BAYLESS.                           Magistrate: Judge Mazzone
    Respondent,      /

CERTIFICATE OF SERVICE

I, Paul Nicoletti, appearing pro se, hereby certify that I have served the foregoing _Petitioner's Response Brief_ upon the defendant/respondent by depositing true copies of the same in the United States mail, postage prepaid, upon the following counsel of record for the defendant/respondent on  6/14/23  :

                                                             /s/ Paul J. Nicoletti
                                                             Paul J. Nicoletti