UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**PAUL NICOLETTI,**

       Petitioner,

       v.                                       **CIVIL ACTION NO. 5:23-CV-120**
                                                             Judge Bailey

**M. J. BAYLESS,**

       Respondent.


## REPORT AND RECOMMENDATION

### I.    Introduction

On March 30, 2023, the pro se petitioner filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [Doc.1]. Petitioner is a federal inmate at FCI Morgantown, in Morgantown, West Virginia, and is challenging the manner in which the Bureau of Prisons ("BOP") has calculated his time credits under the First Step Act ("FSA"). [Doc. 1]. Respondent filed a Motion to Dismiss, or in the Alternative, for Summary Judgment on May 26, 2023. [Doc. 10]. Petitioner filed a Response on June 20, 2023 [Doc. 22], and on June 27, 2023, the respondent filed a Reply. [Doc. 23]. On October 5, 2023, the undersigned entered an Order directing respondent to supplement the record with specific information regarding the calculation of the petitioner's credits. [Doc. 25]. The respondent filed a Response to the Order on October 6, 2023 [Doc. 26], and petitioner filed his Reply on October 16, 2023. [Doc. 28]. The matter is now pending

before the undersigned for a recommended disposition pursuant to LR PL P 2.  For the reasons set forth below, the undersigned recommends that the Petition be granted in part.

## II.     Standards of Review

**A.     Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A party may move to dismiss an action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the party asserting federal jurisdiction.  A trial court may consider evidence by affidavit, deposition, or live testimony without converting the proceeding to one for summary judgment.  **Adams v. Bain**, 697 F.2d 1213, 1219 (4th Cir. 1982); **Mims v. Kemp**, 516 F.2d 21 (4th Cir. 1975).  Because the court's very power to hear the case is at issue in a Rule 12(b)(1) motion, the trial court is free to weigh the evidence to determine the existence of its jurisdiction.  No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.  See **Materson v. Stokes**, 166 F.R.D. 368, 371 (E.D. Va. 1996).  Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.  See Fed. R. Civ. P. 12(h)(3).

**B.     Motion to Dismiss for Failure to State a Claim**

A complaint must be dismissed if it does not allege "'enough facts to state a claim to relief that is plausible on its face.' **Bell Atl. Corp. v. Twombly**, 550 U.S. 554, 570 (2007) (emphasis added)." **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all

doubts and inferences in favor of the plaintiffs, and must view the allegations in a light most favorable to the plaintiffs.  **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice.  **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995).  In **Twombly**, the Supreme Court, noting that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Id. at 555, upheld the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible."  *Id*. at 570.

This Court is well aware that "[m]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion."  **Williams v. Branker**, 462 F. App'x 348, 352 (4th Cir. 2012).  "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment."  **Witthohn v. Fed. Ins. Co.**, 164 F. App'x 395, 396 (4th Cir. 2006).  However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint.  *Id*. at 396–97.

**C.    Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

Finally, this Court notes that *pro se* allegations are held to a less stringent standard than those drafted by lawyers and must be liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978).

### III.   The First Step Act

The FSA establishes a system of "time credits" ("FTCs") and provides eligible inmates the opportunity to earn these credits for participating in evidence-based recidivism reduction programming and productive activities. 18 U.S.C. § 3632(d)(4)(A).

Under the FSA, these FTCs can be applied toward earlier placement in pre-release custody or supervised release.  18 U.S.C. § 3632(d)(4)(C).   Prisoners earn "10 days of time credits for every 30 days of successful participation" in approved programming. 18 U.S.C § 3632(d)(4)(A)(i).  Additionally, a prisoner may earn a total of 15 days of time credits for 30 days of programming, provided the prisoner is determined by the BOP to be at a "minimum or low risk for recidivating, and who, over 2 consecutive assessments, has not increased their risk of recidivism." 18 U.S.C. § 3632(d)(4)(A)(ii).

At the time of its passage, the FSA required the Attorney General to develop a "risk and needs assessment system," to be used by the BOP to determine the recidivism risk of all federal prisoners; classify prisoners as being at a minimum, low, medium, or high risk of recidivism; place prisoners in appropriate programs and productive activities based on those assessed needs; and "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." 18 U.S.C. § 3632(a)(1), (3), and (4).

In compliance with the Act's mandate, the BOP created and published the "Prisoner Assessment Tool Targeting Estimated Risk and Needs," a risk assessment tool, otherwise known as PATTERN. *See* BOP Program Statement 5410.01: *First Step Act of 2018 – Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*, dated November 18, 2022, at Section 5.  In addition, the BOP modified its existing needs assessment system with the goal of improving efforts to identify incarcerated people's needs, which, if addressed, may reduce their recidivism risk. Accordingly, BOP Program Statement 5400.01: *First Step Act Needs Assessment,* dated June 25, 2021, instructs

that the updated Risk and Needs Assessment System ("RNAS") is comprised of two components: PATTERN, the assessment tool which identifies and measures the risk of recidivism, and the Needs Assessment, which assesses the dynamic needs that may reduce recidivism. Id.

The Act requires that the BOP determine the recidivism risk of each prisoner "as part of the intake process," and further, that the recidivism risk of each prisoner successfully participating in programming or activities be "periodically" reassessed. 18 U.S.C. § 3632(a)(1), (4).   According to BOP Program Statement 5410.01, *First Step Act of 2018 – Time Credits: Implementation of 18 U.S.C. § 3632(d)(4)*, supra, the time frames to be followed for conducting  "reassessments" are those contained in BOP Program Statement 5322.13: *Inmate Classification and Program Review*,  supra, pursuant to which, the unit team will document an inmate's progress toward recommended goals and update his or her Individualized Need Plan at "regularly scheduled" program reviews. (Section 5).

## IV.   Background

In his petition, filed herein on March 30, 2023, the petitioner originally claimed that he should have been earning 15 days for every 30 days of programming, beginning on August 31, 2021, the date upon which he commenced serving his BOP sentence. [Doc. 1 at 5].  He alleged that, as a result of the BOP's refusal to use this 15-day "time credit factor" beginning on August 31, 2021, he was improperly denied credits toward his eligibility date for RRC/HC placement. [Doc. 1 at 5, 6].  Petitioner also complained that the BOP "failed to accurately state" his home confinement eligibility date, which, based on his own personal computation, he claimed should be January 22, 2024.  [Doc. 1 at 6;

6

Doc. 22-4]. He further complained that he has not been provided with his conditional Projected Release Date ("PRD"), which he asserts is required by BOP Program Statement 5400.01 [sic], and that, as a result, he has not been referred to RRC/HC as of his self-calculated eligibility date. Id. He requested relief in the form of an Order directing the BOP to recalculate his earned time credits at the rate of 15 days per every thirty-day period "for any and all time spent in BOP custody," to recalculate his release and home confinement dates, to "submit" him for RRC/HC as of January 22, 2024, and to issue his PRD "in accordance with Program Statement 5400.01." [Doc. 1 at 8].

Respondent moved for dismissal, or in the alternative, for summary judgment, asserting that the BOP has properly calculated the petitioner's time credits and that the credits have all been "correctly applied pursuant to 28 CFR § 523.44(d) and 18 U.S.C. §3624(g)(3)." [Doc. 10, at 1]. According to the Declaration of Misty Shaw, Paralegal at the BOP Mid-Atlantic Regional Office, as supported by BOP documentation, respondent argued that the petitioner "[b]egan earning 15 days of time credits for every 30 days of successful participation in programming on March 27, 2022, after he had maintained a minimum risk level for two consecutive assessment periods," designated by the respondent as the time period from August 31, 2021. to September 28, 2021, after his initial assessment was completed, and then the period from September 28, 2021. to March 27, 2022, which is assumedly the date on which the BOP has determined his second risk assessment occurred. [Docs.10 at 3; 18 at ¶ 5; 18-1, 18-2]. Petitioner's computerized "FSA Time Credit Assessment" worksheet [Doc. 18- 2], reflects that he has accrued 572 program days and received 255 days of time credits, which the respondent asserted have

7

been appropriately applied toward the petitioner's release date. [Docs. 10 at 3; 18 at ¶ 6; 18-2].

In his Response to the Motion to Dismiss, or in the Alternative, for Summary Judgment, petitioner in effect amended the grounds for relief set forth in his original petition by arguing that the BOP erred in calculating the starting and ending dates of the "consecutive assessment periods" used to calculate his eligibility for the additional five days of credit. [Doc. 22]. Petitioner now argues that a second recidivism risk assessment was, in fact, conducted prior to March 27, 2022. Petitioner contends he was reassessed on October 7, 2021, but that the record of this assessment is altogether "omitted" from his FSA auto-calculation time credit worksheet. [Doc. 22 at 3]. In support of this new claim, petitioner filed a copy of a "Male PATTERN Risk Scoring" assessment, dated October 7, 2021, [Doc. 22-2], which he points out is identical to that utilized in his initial September 28, 2021 assessment. [Doc. 22-1]. Thus, he now asserts that based on what he claims is an October 7, 2021 assessment, even "in the worst-case scenario," he should have been earning FTCs at the rate of 15 days for every 30 days of programming beginning on October 7, 2021. [Doc. 22 at 3].

The Respondent filed a Reply, supported by the Declaration of Susan Giddings, Unit Chief of the Management Section of the BOP Corrections Programs Branch at the BOP Central Office, asserting that petitioner had "misrepresented" the meaning of the term "consecutive assessment period" by relying on PATTERN "scoring documents" as reflective of the beginning, or end, of an FSA assessment period. [Doc. 23 at 1, 23-1 at ¶ 7]. According to Unit Chief Giddings, assessments and reassessments "are automated" and are conducted pursuant to the timelines contained in the BOP policy and rules which

govern initial classification and program reviews for BOP inmates. [Doc. 23 at 2, 23-1 at ¶ 4]. Accordingly, "the initial FSA assessment is conducted 28 days after the inmate's arrival at his or her initially designated facility, with subsequent FSA reassessments conducted every 90 or 180 days based on the inmate's projected release date." Id. (referencing BOP Program Statement 5322.13: <u>Inmate Classification and Program Review</u>, *supra*). Respondent discounted the petitioner's claim that he had been reassessed on Oct. 7, 2022, and repeated its previously proffered argument that according to the BOP's computerized FSA Time Credit Assessment worksheet, the petitioner's first assessment period began on August 21, 2021, and ended on September 28, 2021, and that his second assessment period began on September 28, 2021, and ended on March 27, 2022, at which time the petitioner then began earning 15 days of credit for every 30 days of programming, because he had, at that point, maintained his minimum risk level for two consecutive assessment periods, following his initial 28 day review and 180 day review. [Docs. 23 at 2; 23-1 at ¶ 6; 10 at 6; 18 at ¶ 5].

The undersigned ordered the respondent to supplement the record herein and provide more specific information, including an explanation of the manner in which the duration between periodic reassessments is calculated and the relevance, if any, of the October 7, 2021 PATTERN assessment in the BOP's determination that it does not constitute the beginning or end of an assessment period for FSA time credit purposes. [Doc. 25].

On October 6, 2023, in Response to the Order, the respondent again relied upon the previously filed Declaration of Susan Giddings [Doc. 23-1] to re-assert the argument that "assessments and reassessments are automated" and conducted in accordance with

the time frames outlined in BOP Program Statement 5322.13 which govern program reviews for inmates. [Doc. 26 at 1, referencing Doc. 23-1 at ¶4].  Respondent simply maintained that Ms. Giddings had already "reviewed Petitioner's file" and determined that the October 7, 2021 PATTERN document filed by petitioner "does not constitute the beginning or end of an assessment period." [Doc. 26 at 2, citing Doc. 23 and Doc. 23-1].

Petitioner filed his Reply on October 16, 2023, claiming that, "at a bare minimum," he is entitled to FSA credits at the rate of 15 days for every 30 day time period commencing on October, 7, 2021," and further seeking an Order that his conditional PRD be set as January 22, 2024, based on what he claims are "unopposed" claims regarding the accuracy of his own time credit calculation as reflected in the handwritten chart he composed and filed. [Doc 28].

## V.   Analysis

### A. Designating dates for the award of 10 or 15 days

At the outset, the undersigned notes that the law clearly requires two assessments before a prisoner is eligible to accrue 15 days of time credits, and, accordingly, the petitioner's initial claim that he is entitled to begin accruing 15 days of credit from the start of his incarceration, is without merit.  18 U.S.C. § 3632(d)(4)(A)(ii).

The petitioner also disputes the applicability of BOP Program Statement 5322.13: <u>Inmate Classification and Program Review</u>, *supra*, to FSA assessments and reassessments.  He complains that because the policy was enacted four years before the FSA and does not contain specific "assessment or reassessment" language, that it has "no connection whatsoever" to the FSA and that it is "a mystery" to him how Unit Chief Susan Giddings "can base sworn testimony" on this policy.  [Doc. 28 at 2].  Petitioner is

referencing the Declaration of Susan Giddings [Doc. 23-1], wherein she states that assessments and reassessments under the FSA are conducted at intake and then every 90 or 180 days, based on an inmate's projected release date, in "accordance with the initial classification and Program Review timelines as outlined in policy and rules language" [Doc. 23-1 at 2, ¶ 4], and specifically identified as Program Statement 5322.13: <u>Inmate Classification and Program Review</u>, *supra*, by respondent in its Reply to the Motion to Supplement [Doc. 26 at 1]. Petitioner's argument in this respect is likewise without merit, because BOP Program Statement 5410.01, <u>First Step Act of 2018 – Time Credits: Implementation of 18 U.S.C. § 3632(d)(4)</u>, *supra*, drafted for the express purpose of describing and implementing "procedures for the earning and application of Time Credits" under the FSA, explicitly states that inmates will be "reassessed for both risk level and needs at each regularly scheduled Program Review." (Section 5). Indeed, the policy states that "[a]s defined in the Program Statement: Inmate Classification and Program Review, the unit team will document the inmate's progress toward recommended goals and update the Individualized Need Plan *which will include the reassessed risk level*, need areas, and program recommendations." (Id.) (emphasis added).

Petitioner *does* correctly point out, however, that there appears to be nothing in the language of the policy to suggest that additional PATTERN reassessments are precluded at interim times between the 90- or 180-day intervals, and/or from being used as a basis for calculating a prisoner's eligibility for time credits under the FSA. [Doc. 28 at 3]. Indeed, the statute itself states that a prisoner's risk reassessment is to be conducted at least annually. 18 U.S.C. § 3632(d)(5). Respondent has not addressed the matter of what

process and procedures constitute an assessment, and what assessment tools must be utilized and scored to qualify under the statute as a consecutive assessment for purposes of the statue.

Rather, respondent argues that petitioner "misrepresents the term consecutive assessment period," in that "PATTERN "scoring documents do not reflect the beginning or end of an assessment period," and that their existence "does not mean a new assessment period began." [Doc. 23 at 1, citing 23-1 at 2, ¶ 7; Doc. 23-1 at 2]. Similarly, beyond the argument that petitioner cannot rely on the October 7, 2021 PATTERN score to demonstrate that a consecutive risk assessment, or reassessment, was conducted on that date, no facts or guidance have been forthcoming explaining the presence of that October 7, 2021 PATTERN score in the petitioner's BOP records. The undersigned further notes that while the Respondent uses the term assessment "periods;" the statutory language refers only to assessments. 18 U.S.C. § 3632(d)(4)(A)(ii). Whether this distinction is of import is not addressed.

Petitioner asserts that, based on the October 7, 2021 PATTERN score sheet and assessment, the "correct number of FSA Time Credits should be as follows: 8-31-21 through 10-7-21 at the rate of 10 days/30 day period [and] 10-7-21 through Present, at the rate of 15 days/30 day period." [Doc. 22 at 4]. The undersigned finds that in viewing the allegations of the Petition in a light most favorable to the petitioner, he has stated a claim that is plausible on its face with regard to the October 7, 2021 PATTERN score sheet. **Bell Atl. Corp**., *supra*. In consideration of the respondent's Motion to Dismiss, or in the Alternative for Summary Judgment, viewing the evidence in the light most favorable to the non-moving party, the undersigned finds that the petitioner has presented specific

evidence showing that there is indeed a genuine issue of fact sufficient to create fair doubt beyond "mere speculation." **Anderson,** *supra* at 248. The undersigned finds that the October 7, 2021 PATTERN score sheet was a second assessment, which would allow petitioner to earn an additional 5 days per 30 day period, beginning on October 7, 2021. Accordingly, it is recommended that the respondent's Motion for Summary Judgment be denied with respect to the claim that petitioner's second assessment date is March 27, 2022, and that he should not begin earning 15 days per 30 days until that date. The undersigned recommends granting the Petition on the limited ground that for purposes of the FSA, an assessment occurred on October 7, 2021, as reflected by the PATTERN score sheet from that date.

   B.  **RHC/HC placement**

Petitioner also takes issue with the fact that the BOP has not yet implemented the planning application described in BOP Program Statement 5410.01: *Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)*, whereby potential future credits that a prisoner may be eligible to earn under the FSA will be estimated at the beginning of the prisoner's sentence, in the same manner the BOP does for good time credits. [Doc. 22, 28]. More specifically, the policy provides that for prisoners with minimum and low PATTERN scores, the BOP "will initially estimate an FSA *conditional* Projected Release Date (PRD) by calculating the maximum number of potential FTCs that an inmate may earn during his or her sentence." Id. at Section 10 (emphasis added). Petitioner complains that his "conditional PRD," or an estimate of his FSA projected release, "will have a significant impact on the length of [his] sentence" and he requests the Court to

find that he is eligible for a home confinement date of January 22, 2024, based on his own calculations. [Doc. 28 at 2; Doc. 22-4].

With respect to the petitioner's claim that his handwritten chart correctly reflects that he is entitled to any additional time credits, the undersigned cannot agree. First, the petitioner has credited himself with 15 days from the time of his incarceration, which as set forth herein, he is not entitled to under the FSA. Second, petitioner cannot use future projected credits for his time calculations. It is beyond question that time credits "will not be applied towards an inmate's release date unless *earned*." Id. (emphasis added). Petitioner has also erroneously calculated potential credits from time he projects he will spend in prerelease custody, which is likewise not authorized.

In any event, as respondent correctly notes, [Doc. 10 at 6], the FSA expressly limits the petitioner's ability to apply his FTCs until the number of his FTCs is equal to the remainder of his term of imprisonment. *See* 18 U.S.C. § 3264(g)(1)(A). As of the BOP's May 4, 2023 calculation, petitioner had accrued 572 program days and received 255 days of time credits. [Docs. 10 at 6; 18-2; 23-2]. To this end, it is further noted that the undersigned's calculation with respect to the date upon which it is recommended that petitioner begin receiving 15 days of credit, results in a net benefit to petitioner of only 25 days. When his total FTCs equal the remainder of time on his sentence, the BOP will determine if he meets the criteria to transfer to a pre-release RRC or home confinement, or to receive an early release. *See* 18 U.S.C. §§ 3632(d)(4)(C); 3624(g). Petitioner's contention that he is entitled to have FTCs applied to his sentencing computation to make him eligible for an immediate RRC or home confinement placement fails to state a claim for which relief can be granted.

14

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Petition be **GRANTED IN PART** as to the petitioner's claim relating to the October 7, 2021 assessment; that respondent's Motion to Dismiss, or in the Alternative for Summary Judgment [Doc. 10] be **GRANTED IN PART**; that petitioners' remaining claims be **DENIED** and **DISMISSED WITH PREJUDICE** for failure to state a claim; and that the Petition be dismissed with instructions to the BOP to recalculate petitioner's time credits in accordance with this report. The undersigned further recommends that petitioner's Motion to Schedule a Pretrial Conference Pursuant to Fed.R.Civ.Pro. 16 [Doc. 24] be **DENIED AS MOOT**.

The petitioner shall have **fourteen (14) days** from the date of service of this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** 28 U.S.C. §636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

**DATED**:  November 15, 2023

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE